# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNY A. HOOKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-12-426-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Johnny A. Hooks requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 28, 1973, and was thirty-seven years old at the time of the administrative hearing (Tr. 26, 34). He completed the twelfth grade, taking regular and special education classes, and has no past relevant work performed at the sedentary level (Tr. 20, 36, 64, 160-161). The claimant alleges inability to work since October 7, 2008, due to congestive heart failure, high blood pressure, kidney problems, and diabetes (Tr. 160).

## Procedural History

On April 24, 2010, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Larry D. Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 18, 2011 (Tr. 14-21). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform a limited range of sedentary work, *i. e.*, he could

lift/carry ten pounds occasionally and less than ten pounds frequently, and stand/walk two hours in an eight-hour workday and sit six hours in an eight-hour workday, but only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds (Tr. 17). The ALJ concluded that although the claimant had no past relevant work at the sedentary level, he was nevertheless not disabled because there was other work he could perform in the national and regional economy, *i. e.*, production worker, inspector, and escort vehicle driver (Tr. 20-21).

**Review**

The claimant contends that the ALJ erred by failing to properly consider whether the claimant met Listing 4.02, Chronic Heart Failure. Although the undersigned does not find this contention persuasive, the decision of the Commissioner should nevertheless be reversed and the case remanded to the ALJ for further consideration.

The uncontested medical evidence reveals that the claimant's severe impairments were ischemic heart disease, diabetes mellitus, hypertension, kidney disorder and obesity (Tr. 16). On September 22, 2010, a state agency physician reviewed medical records and wrote that the claimant was unable to work a forty-hour week, *i. e.*, that his "RFC is ok," but his ability to work was further limited by his obesity (Tr. 511). Seven days later, the same physician completed a physical RFC assessment, finding that the claimant could perform the full range of sedentary work, that obesity still limited his RFC, but "[u]pon a closer review of the [medical evidence] and [daily activities,] a sed RFC has been

completed" (Tr. 520, 513-519).  She also noted that the claimant's medical non-compliance might be due to financial factors (Tr. 519).

Evidence submitted to the Appeals Council reflects that Dr. Thomas M. Lynn reviewed the claimant's medical records and found that he had the medical conditions of: type II diabetes mellitus, poorly controlled; arterial hypertension, poorly controlled, with hypertensive heart disease, compensated congestive heart failure, and chronic renal insufficiency; and morbid obesity (Tr. 596).  He found from his review that the claimant maintained consistently elevated blood glucose determinations beginning in 2007.  He noted that there was evidence of renal disease, but that it was likely more related to his hypertension rather than his status as a diabetic (Tr. 596).  As to hypertension, congestive heart failure and chronic renal insufficiency, Dr. Lynn recognized that the claimant's left ventricular ejection fractions had risen with appropriate treatment but noted that there remained evidence of left ventricular enlargement via echocardiograms, ECGs, and X-rays (Tr. 597).  He further noted that controlling the congestive heart failure would be dependent upon managing the claimant's hypertension along with a substantial weight loss of fifty to one hundred pounds and moderation of his activity level (Tr. 597-598).  Describing the chronic renal insufficiency as largely asymptomatic, Dr. Lynn opined that it would slowly worsen unless the claimant could control his hypertension (Tr. 598).  He further noted that the claimant's weight was consistently between 375 and 400 pounds, or more, and opined that the claimant's congestive heart failure combined with morbid obesity made it very unlikely that he was employable, and that his health would continue

to deteriorate into the future. Dr. Lynn concluded that the claimant's impairments had reached an equivalency to Listing 4.02, and had been there since October 2008 (Tr. 598).

At the administrative hearing, the claimant's representative argued that although the medical records did not establish that he actually *met* Listing 4.02, they demonstrated that he was borderline as to diastolic failure, past ejection fractions and thickening of the septal wall. She also noted that the claimant had been admitted to the emergency room four times since 2008, and his weight would vary by forty or fifty pounds from admission to discharge based on water retention and swelling, and pointed out his consistently high blood sugars (Tr. 33-34). The claimant testified that he quit working in October 2008, which coincided with one of his admissions to the hospital for headaches, chest pain, and shortness of breath (Tr. 42). He testified that he has had high blood pressure since he was a teenager and had even switched doctors and tried multiple medications to get it under control, but that he had been unable to do so, which resulted in multiple visits to the emergency room where they would administer IV fluids and medication to bring his blood pressure down (Tr. 42-44). The claimant testified that he could only walk about five minutes before his legs and feet began to swell, and that despite taking a water pill he still had to sit down and recline to manage this problem (Tr. 49). He further testified that he slept in a recliner to help elevate his legs and control the swelling and because he had difficulty breathing when lying flat (Tr. 50-51). He stated that his calves would cramp at night, mostly in his left leg, and that both feet had tingling and numbness (Tr. 56). The claimant further testified that he tried to walk the half-mile distance to his grandfather's

house daily, but he had to stop halfway and rest for fifteen or twenty minutes to catch his breath (Tr. 51-52). He stated that he lived alone and maintained his house, including fixing his own meals (Tr. 53), and took care of his personal hygiene, but used a chair while taking a shower and usually had to sit down during his shower after approximately 15 minutes (Tr. 54-55). He stated he could comfortably lift 15 or 20 pounds, but not repeatedly (Tr. 59).

In his written opinion, the ALJ considered Listings 4.00 Cardiovascular System, 6.00 Genitourinary Impairments, and 9.00 Endocrine System, as well as Soc. Sec. Rul. 02-1p at step three, but concluded that the claimant did not meet a listing (Tr. 16). He found that the evidence supported the claimant's allegations of hypertension, chest pain, congestive heart failure, decreased renal function, obesity, and diabetes mellitus (Tr. 18), but found that the claimant was not credible or as impaired as alleged, in light of his activities of daily living (Tr. 19). The ALJ assigned great weight to the opinions of the state agency physicians (but did not mention that one had originally found the claimant unable to work a forty-hour week), but disagreed as to postural limitations (Tr. 19).

At step four, the ALJ summarized the claimant's testimony and recited findings in the record as to the claimant's obesity, as well as the state agency physician's statement that obesity further limited the claimant's RFC. The ALJ limited the claimant to less than sedentary work, but failed to acknowledge that such an RFC "reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare[.]" Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *1 (July 2, 1996).

Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* Soc. Sec. Rul. 02-1p, 2000 WL 628049 at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *6 Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.*

The ALJ recited the foregoing authorities as to obesity but failed to connect them to the medical record in his findings as to the claimant's RFC. Further, the ALJ failed to discuss the claimant's impairments individually or in combination, or to consider whether the medical evidence demonstrated any additional or cumulative effects from his obesity. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity

must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-01p, 2000 WL 628049, at *1, *5-*6, *7; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). This was important to do because the claimant argued at the administrative hearing and on appeal that his combination of impairments makes him unable to work. Indeed, given the impact that obesity and poorly controlled diabetes can have on the cardiovascular and respiratory systems, the ALJ erred in failing to consider these impairments together. *See* Soc. Sec. Rul. 02-1p, 2002 WL 346862881, at *5. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2000 WL 628049, at *6.

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence is bolstered by evidence submitted to the Appeals Council after the hearing, which included Dr. Lynn's review of the medical record. The Appeals Council was required to consider this evidence if it is: (i) new; (ii) material; and, (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d

1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The parties do not address whether the evidence submitted by the claimant after the hearing qualifies as new, material, and chronologically relevant, but the Appeals Council *did* consider it (Tr. 4), and the Court therefore has no difficulty concluding that it does qualify.

First, Dr. Lynn's assessment is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). It was not presented to the ALJ prior to his decision and was thus neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Id. See also Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). Dr. Lynn's assessment indicates that the claimant's conditions, in combination, could affect his ability to perform work on a full-time basis. This evidence suggests the claimant has impairments discounted in his RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Dr. Lynn indicated that his review of the medical record and assessment of the claimant's applicable impairments applied beginning in October 2008 to the present, and his review is therefore chronologically

relevant to the ALJ's decision. The evidence presented after the administrative hearing therefore *does* qualify as new and material evidence under C.F.R. § 404.970(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). The Appeals Council considered this new evidence, but did not analyze it in accordance with the appropriate standards, and the ALJ had no opportunity even to consider it. Under the circumstances, the undersigned Magistrate Judge finds that the decision of the Commissioner should be reversed and the case remanded to the ALJ for further consideration of this additional evidence. If such consideration results in any modification of the claimant's RFC, the ALJ should re-determine the work, if any, he can perform and ultimately whether he is disabled.

**Conclusion**

The undersigned Magistrate Judge PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and that the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of March, 2014.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Steven P. Shreder
　　　　　　　　　　　　　　　　United States Magistrate Judge
　　　　　　　　　　　　　　　　Eastern District of Oklahoma